IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      Criminal Action: 5:08-cr-1

JOSHUA MICHAEL RIDINGS,

        Defendant.

**REPORT AND RECOMMENDATION DEFENDANT'S MOTION TO DISMISS FOR LACK OF VENUE AND MOTION TO SUPPRESS ALL DNA EVIDENCE BE DENIED.**

**ORDER THAT DEFENDANT'S MOTION TO CHANGE VENUE OR, ALTERNATIVELY, OTHER APPROPRIATE RELIEF DUE TO PREJUDICIAL PRETRIAL PUBLICITY BE DENIED AND MOTION TO COMPEL GOVERNMENT TO PROVIDE WRITTEN STATEMENT OF UNCHARGED MISCONDUCT EVIDENCE BE GRANTED IN PART AND DENIED IN PART.**

## I. INTRODUCTION

**A.    Background**

Defendant was the only defendant named in a one count indictment alleging on or about February 20, 2007, he crossed the state line from West Virginia into Ohio with the intent to engage in a sexual act with a person who had not attained the age of twelve years, in violation of Title 18, United States Code, section 2241(c).

**B.    Motions**

On June 9, 2008, defendant filed a Motion to Dismiss for Lack of Venue; a Motion to Change Venue or, Alternatively, Other Appropriate Relief Due to Prejudicial Pretrial Publicity; a Motion to Suppress All DNA Evidence; and a Motion to Compel Government to Provide

1

Written Statement of Uncharged Misconduct Evidence.[1]  On June 18, 2008, Plaintiff,

[hereinafter referred to as "the Government"], responded to defendant's Motions.[2]

## II. MOTION TO DISMISS FOR LACK OF VENUE

### A.  Findings of Fact

No testimony was offered in support of this motion.  The indictment filed in the present case speaks for itself, and reads as follows:

> "On or about the 20th day of February, 2007, in the city of Wheeling, Ohio County, West Virginia, within the Northern District of West Virginia and elsewhere, the defendant JOSHUA MICHAEL RIDINGS, did cross the state line from West Virginia into the State of Ohio with the intent to engage in a sexual ext with a person who had not attained the age of twelve years, in violation of Title 18, United States Code, Section 2241(c)."

### B.  Contentions of Parties

Defendant alleges the indictment should be dismissed because it fails to establish venue within the Northern District of West Virginia.  Defendant argues because venue properly lays where the crime is committed, and because § 2241(c)'s element of "cross[ing] the state line" was committed only upon entering Ohio, the alleged crime was not committed in the Northern District of West Virginia.  The Government contends venue is proper in the Northern District of West Virginia because the alleged offense is a "continuing offense," such that venue lays in any district in which the offense was begun, continued, or completed.

### C.  Analysis

Rule 18 of the Federal Rules of Criminal Procedure states, "except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the

---

[1] Docket Nos. 24, 25, 26, 27.

[2] Docket No. 29.

2

offense was committed." Fed. R. Crim. P. 18. § 2241 does not expressly provide for venue. Therefore, venue is proper where the offense was committed, which is in turn determined by the "the nature of the crime alleged and the location of the acts or acts constituting it." United States v. Anderson, 328 U.S. 699, 703 (1946). A review of the language of § 2241(c) reveals Congress' intent to set forth a continuing offense, rather than an offense that is committed at one point in time or place. See United States v. Cryar, 232 F.3d 1318, 1322 (10th Cir. 2000). As a result, the "federal continuing offense statute," or Title 18, United States Code, section 3237(a), applies, and provides:

> "Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

Id. As noted above, § 2241(c) does not contain a specific venue provision. Accordingly, and pursuant to § 3237(a), venue for the prosecution of a violation of § 2241(c) is proper where the crime began, was continued, or completed. The indictment alleges the crime began in Wheeling, West Virginia, which is within the Northern District of West Virginia. Accordingly, venue is proper within the Northern District of West Virginia.

**D.     Recommendation**

For the reasons state above, the Court recommends defendant's Motion to Dismiss for Lack of Venue be **DENIED**.

### III. MOTION TO CHANGE VENUE OR, ALTERNATIVELY, OTHER APPROPRIATE RELIEF DUE TO PREJUDICIAL PRETRIAL PUBLICITY.

**A.     Findings of Fact**

The only evidence offered by defendant in support of his motion is a binder (marked as

Defendant's Exhibit A), containing news articles from local, state, and national media outlets. The binder contains 172 articles spanning from February 20, 2007 (the date of the alleged offense) to May 16, 2008. Specifically, the binder contains 58 articles from the Intelligencer/News Register dated February 21, 2007 through April 18, 2008; 66 articles from WTRF-TV7 dated February 20, 2007 through May 16, 2008; 46 articles from WTOV9-TV dated February 20, 2007 through April 12, 2008; 1 broadcast from West Virginia Public Broadcasting that aired April 9, 2008; and 1 broadcast from America's Most Wanted that aired February 26, 2008.

**B.     Contentions of Parties**

Defendant moves the Court for a change of venue to another district or, at a minimum, another division, on the grounds the pretrial publicity surrounding his case has made it "impossible" for him to get a "fair trial." In the event the Court declines to presume prejudicial pretrial publicity, defendant requests the Court send a questionnaire to the jury pool to investigate their knowledge of the case. The Government argues prejudice should not be presumed from the pretrial publicity, and that defendant's right to a fair and impartial trial can be adequately protected by the use of a juror questionnaire and the voir dire process. It therefore has no objection to the Court sending a questionnaire to prospective jurors.

**C.     Analysis**

Motions for change of venue alleging prejudicial pretrial publicity are considered under the two-step process set forth in United States v. Bakker, 925 F.2d 728, 732 (4th Cir. 1991). First, the Court must determine whether the pretrial publicity "is so inherently prejudicial that trial proceedings must be presumed to be tainted." Id. at 732. If the Court finds pretrial

publicity is so prejudicial, the Court must grant the change of venue prior to jury selection. Id. However, "only in extreme circumstances may prejudice be presumed from the existence of pretrial publicity itself." Id. "Sheer volume of publicity alone does not deny a defendant a fair trial." Id., citing Dobbert v. Florida, 432 U.S. 282, 303 (1977). Similarly, inflammatory articles, alone, do not establish presumed prejudice. United States v. Higgs, 353 F.3d 281, 307 (4th Cir. 2003); see, also, United States v. De La Vega, 913 F.2d 861, 865 (11th Cir. 1990) [finding presumed prejudice was not established by 350 news articles which were largely factual in nature and "could not have created the sort of inflamed community atmosphere which courts deem presumptively prejudicial."].

If the court declines to find presumed prejudice at step one, the court must next conduct a voir dire of prospective jurors aimed at "disclosing the impact that both past and future media attention would have upon potential jurors." Id. at 733. "Only where voir dire reveals that an impartial jury cannot be impanelled would a change of venue be justified." Id. In making such a determination, the United States Supreme Court cautions,

> "[I]t it not required . . . that jurors be totally ignorant of the facts and issues involved. . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

Irwin v. Dowd, 366 U.S. 717, 722-23 (1961).

The Court finds defendant has failed to establish the pretrial publicity surrounding the alleged offense has made it such that he can longer get a fair trial in the Wheeling division of the District Northern District of West Virginia, or in the District, generally. While there were approximately 170 news articles/broadcasts covering the alleged offense, and while many of the articles contained inflammatory remarks made by law enforcement officers or members of the

5

community, the majority of the articles were factual. The Court finds defendant's right to an impartial jury can be adequately protected through the use of a jury questionnaire and the voir dire process.

**D.     Order**

For the reasons state above, the Court Orders Defendant's Motion for Change of Venue Or, Alternatively, Other Appropriate Relief Due to Prejudicial Pretrial Publicity be **DENIED**, and suggests the parties submit to the Court, at the earliest possible moment, an agreed-upon jury questionnaire.

### IV. MOTION TO SUPPRESS DNA EVIDENCE

**A.     Findings of Fact**

The only evidence offered by defendant in support of his motion was the testimony of Detective Gossett, and an audio/video recording of Detective Gossett's interview of defendant on January 5, 2007 at the Owensboro Police Department. The recording speaks for itself.

On January 1, 2007, a woman was sexually assaulted in Owensboro, Kentucky. On January 5, 2007, defendant voluntarily arrived at the Owensboro Police Department and was questioned by Detective Gossett (and a second officer) about his whereabouts on or about January 1, 2007. The interview was audio and video recorded. At the outset of the interview, Detective Gossett informed defendant of his Miranda rights, and his right to speak with an attorney at any point during the interview. Defendant signed a waiver of his Miranda rights, and signed a statement that read, "I don't want a lawyer at this time." Defendant was not informed he was under arrest, or that he was not free to leave.

After approximately 45 minutes of questioning the defendant, Detective Gossett told

defendant to "hang tight," and the Detective and the second officer left the interview room. Detective Gossett returned a few minutes later and asked defendant, "if it were to come down to it, would you take a polygraph test?" Defendant responded he could not take a polygraph test because he has high blood pressure. Sergeant Burns entered the interview room and asked defendant whether he would take a polygraph test if he were told his high blood pressure was not an issue. Defendant responded, "I'd have an attorney there, but yeah." Sergeant Burns then asked the defendant if he would submit to a male rape kit. Defendant said he would. As the interview concluded, defendant, again, stated that he would want his attorney present during the polygraph examination. Defendant submitted to the male rape kit and then left the police department.

**B.    Contentions of Parties**

Defendant moves the Court to suppress all DNA evidence obtained from him on or about January 5, 2007 because the evidence was obtained in violation of his constitutional right to counsel. Specifically, he contends he invoked his right to counsel while being questioned by the officers, such that all further questioning - including asking defendant whether he would submit to a rape kit - should have ceased. His contention relies on his statements to the officers that while he would submit to a polygraph test, he'd have, and want, his attorney "there." The Government argues defendant's motion lacks merit because defendant's right to counsel was not implicated during the interview.

**C.    Analysis**

Defendant's Right to Counsel Under *Miranda*

Stemming from the Fifth Amendment's protection against compelled self-incrimination,

an individual has the right to have counsel present during custodial interrogations. Miranda v. Arizona, 384 U.S. 436 (1996). While that right may be waived, a subsequent (and unambiguous) invocation of the right mandates that interrogation cease until an attorney is present or the individual reinitiates conversation. Edwards v. Arizona, 451 U.S. 477 (1981).

The Court finds defendant's right to counsel under Miranda was not implicated during his interview at the Owensboro police department because he was not in ""custody." Rather, defendant voluntarily went to the police station; was not handcuffed; was not placed under arrest; and was not told he could not leave. See Oregon v. Mathiason, 429 U.S. 492, 495 (1977) [although an "interview of one suspected of a crime by a police officer will have coercive aspects to it," Miranda warnings need not be administered to everyone the police question.]. Even had defendant's right to counsel under Miranda attached, defendant knowingly, intelligently, and voluntarily waived his right to counsel. Furthermore, his subsequent reference to wanting counsel present during the polygraph test was insufficient to constitute a request counsel be present during the interview or the administering of the male rape kit. See Davis v. United States, 512 U.S. 452, 459-62 (1994). For these reasons, there is no merit to defendant's argument the DNA evidence was obtained in violation of his right to counsel under Miranda.

Sixth Amendment Right to Counsel

Pursuant to the Sixth Amendment, a criminal defendant has the right to have counsel present at trial, and at "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." United States v. Wade, 388 U.S. 218, 226 (1967). Once the right attaches, officers may not deliberately elicit incriminating statements about the offense from the defendant outside the presence of counsel,

unless the defendant waives his right to counsel. Fellers v. United States, 540 U.S. 519, 523, 24 (2004). A defendant's Sixth Amendment right to counsel "attaches only at or after the initiation of adversary judicial proceedings against the defendant." United States v. Gouveia, 467 U.S. 180, 187 (1984). Because the right is "offense specific," it attaches only to those proceedings relating to the offense for which the defendant has been indicted or otherwise formally charged. McNeil v. Wisconsin, 501 U.S. 171, 175 (1991).

The Court finds defendant's Sixth Amendment right to counsel was not implicated during his interview at the Owensboro police department, because he had not yet been indicted or formally charged in the present offense. For this reasons, there is no merit to defendant's argument the DNA evidence was obtained in violation of his Sixth Amendment right to counsel.

**D.    Recommendation**

For the reasons state above, the Court recommends defendant's Motion to Supress DNA Evidence be **DENIED**.

**V.    MOTION TO COMPEL GOVERNMENT TO PROVIDE WRITTEN STATEMENT OF UNCHARGED MISCONDUCT EVIDENCE.**

**A.    Findings of Fact**

No evidence was offered in support of this motion.

**B.    Contentions of Parties'**

Defendant moves the Court to compel the Government to provide "immediate notification" of evidence it intends to offer under Rules 404(b) and 413 of the Federal Rules of Evidence. Defendant assert that if notification of 404(b) evidence is delayed until 14 days before trial (as ordered by the Court's Scheduling Order), and notification of 413 evidence is delayed

until 15 days before trial (as set forth in Rule 413), he will not have adequate time to prepare an effective challenge to the evidence. The Government alleges it has provided defendant with a "substantial amount" of 404(b) and 413 evidence, including "investigative reports and related documents arising out a number of other crimes and/or misconduct of defendant (including alleged sexual assaults allegedly committed by defendant in various jurisdictions)." The Government argues defendant therefore has knowledge of "each and every instance of alleged misconduct that may be offered pursuant to Rule 404(b) and 413," such that he cannot argue "surprise" or "inadequate time to prepare." Notwithstanding its position on the merits of defendant's motion, the Government represents it may be able to disclose by July 15, 2008 the 404(b) and 413 evidence it intends to offer at trial.

**C.     Analysis**

Pursuant to the Scheduling Order entered by Judge Frederick P. Stamp on May 7, 2008, Rule 404(b) evidence must be disclosed by July 29, 2008.[3] Pursuant to Rule 413 of the Federal Rules of Evidence, Rule 413 evidence must be disclosed fifteen days prior to trial, or July 28, 2008. Due to the extensive amount of 404(b) and 413 evidence at issue in this case, the Court finds the goals of Rule 404(b)'s and Rule 413's pre-trial notice requirement would be best met by the Government disclosing to defendant by July 14, 2008 any 404(b) and 413 evidence it intends to introduce at trial.

**D.     Order**

For the reasons stated above, the Court Orders Defendant's Motion to Compel Government to Provide Written Statement of Uncharged Misconduct Evidence be **GRANTED**

---

[3] Doc. No. 21.

in part, and **DENIED** in part, and Orders the Government to disclose to defendant by July 14, 2008 all 404(b) and 413 evidence it intends to introduce at trial.

## VI.  RECOMMENDATIONS AND ORDERS

For the reasons stated herein, the undersigned:

1) Recommends defendant's Motion to Dismiss for Lack of Venue be **DENIED**.

2) Orders defendant's Motion for Change of Venue Or, Alternatively, Other Appropriate Relief Due to Prejudicial Pretrial Publicity be **DENIED**, and suggests the parties submit to the Court, at the earliest possible moment, an agreed-upon jury questionnaire.

3) Recommends defendant's Motion to Supress DNA Evidence be **DENIED**.

4) Orders Defendant's Motion to Compel Government to Provide Written Statement of Uncharged Misconduct Evidence be **GRANTED** in part, and **DENIED** in part, and Orders the Government to disclose to defendant by July 14, 2008 all 404(b) and 413 evidence it intends to introduce at trial.

Within ten (10) days after being served with a copy of this Report and Recommendation and Order, any party may file with the Clerk of Court written objections identifying those portions of the recommendation or order to which objection is made and the basis for such objections.  A copy of any objections shall also be submitted to the Judge Frederick P. Stamp, United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

Filing of objections does not stay this order.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation and Order to defendant and counsel of record.

**IT IS SO ORDERED**.

DATED: June 27, 2008

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE